IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUSTIN MICHAEL CREDICO | : | CIVIL ACTION |
| | : | |
| v. | : | No. 13-1255 |
| | : | |
| WEST GOSHEN POLICE, et al. | : | |

# MEMORANDUM

**Juan R. Sánchez, J.**                                                                                                                            **November 18, 2013**

Pro se Plaintiff Justin Michael Credico brings this action pursuant to 42 U.S.C. § 1983 and Pennsylvania law against the West Goshen Police and Detective David Maurer for retaliation and malicious prosecution. He also asserts § 1983 claims against an unknown Chester County Sheriff Department official (Unknown Sheriff) for interfering with his access to the courts and Deputy Reeves of the Chester County Sheriff Department for excessive force. Lastly, he brings a § 1983 claim against Chester County for failure to train.

These Defendants filed two separate motions asking this Court to dismiss the Complaint against them pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11.

In addition, because this Court granted Credico leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915, the Court can dismiss his Complaint if, among other things, it is frivolous or fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B). Whether a complaint fails to state a claim under § 1915 is governed by the same standard applicable to motions to dismiss under Rule 12(b)(6). *See Scott v. Del. Dep't of Family Servs.*, No. 13-1898, 2013 WL 3657988, at *1 (3d Cir. July 16, 2013).

For the reasons set forth below, the Defendants' motions will be granted. When dismissing a civil rights complaint for failure to state a claim, a district court must grant the plaintiff leave to amend—even when the plaintiff does not request leave—unless amendment would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). Because it is clear that amendment would be futile in this case, Credico's claims will be dismissed with prejudice.

## I. CLAIMS AGAINST WEST GOSHEN POLICE AND DETECTIVE MAURER

On June 28th, 2012, Credico approached Detective Maurer in a cemetery using profanities and obscene hand gestures, and Detective Maurer issued him a summary citation for disorderly conduct. The charge was later upgraded to harassment, and Credico was convicted by order of Magistrate District Judge William D. Kraut. Credico appealed this conviction to the Chester County Court of Common Pleas. At trial, Credico was acquitted of the charge of harassment by Judge Ann Marie Wheatcraft based on a technical error in changing the citation from disorderly conduct to harassment without issuing a separate citation and the fact Credico did not engage in a "course of conduct" as required to establish a claim for harassment. Judge Wheatcraft did, however, note that Credico approached Detective Maurer in a threatening manner. Credico brings claims for retaliatory prosecution, malicious prosecution, and First

Amendment retaliation against the West Goshen Police Department and Detective Maurer in his official and individual capacity pursuant to 42 U.S.C. § 1983 and Pennsylvania law.

### a. Claims Against West Goshen Police

The claims against the West Goshen Police pursuant to § 1983 will be dismissed with prejudice because local police departments are not "persons" who can be sued under that statute. A police department is considered a subunit of the city government and not distinct from the government at large because the department is "merely a vehicle through which the city fulfills its policing functions." *Johnson v. City of Erie, Pa.*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993); *see also Talley v. Trautman*, No. 96-5190, 1997 WL 135705, at *2 (E.D. Pa. Mar. 13, 1997) (holding that a municipal police department, without an identity separate from the municipality of which it is a part, does not constitute a natural or artificial person for purposes of a § 1983 action); *Irvin v. Borough of Darby,* 937 F.Supp. 446, 450 (E.D. Pa. 1996) (dismissing § 1983 claims against the Darby Police because "the police department is merely an arm of the local municipality"). Credico may only assert this claim as a municipal liability claim against the West Goshen Township.

The Complaint fails to state a claim against the Township, however, for municipal liability. A municipality may be held liable under § 1983 for its employee's violation of a citizen's constitutional rights, although not on a respondeat superior theory of liability. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-92 (1978). "Rather, a municipality may be held liable for the conduct of an individual employee or officer only when that conduct implements an official policy or practice." *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006). There are three circumstances under which a municipality may be liable*:* "(1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the

3

government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred." *Id.*

Credico does not set forth any facts relating to wrongdoing by the West Goshen Township. Although he claims an event similar to the one at issue in this case occurred in 2008 with another officer, he does not provide details about that incident or explain how the two events implicate either the West Goshen Police Department or the Township. In effect, Credico merely asserts the Township should be liable because Detective Maurer is its employee, which is an impermissible respondeat superior theory of liability. Because amendment would be futile since this type of respondeat superior claim is never allowed to be asserted pursuant to § 1983, this claim will be dismissed with prejudice.

Credico also asserts a claim under Pennsylvania law against the Township for malicious prosecution, but this claim is barred by the Pennsylvania Political Subdivision Tort Claims Act (PSTCA), 42 Pa. Cons. Stat. §§ 8541–8542. The PSTCA grants local agencies immunity from liability for damages caused by agency employees, subject to eight specifically enumerated statutory exceptions. *See* 42 Pa. Cons. Stat. § 8541.[1] Because malicious prosecution does not fall within one of the exceptions, the Township is immune from this claim, and the claim will be dismissed with prejudice.

---

[1] The exceptions to the grant of immunity are: (1) vehicle liability, (2) care, custody, or control of personal property, (3) real property, (4) trees, traffic controls, and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, and (8) care, custody, or control of animals. 42 Pa. Cons. Stat. § 8542.

### b. Claims against Detective Maurer

Credico's claims against Detective Maurer in his official capacity pursuant to § 1983 will also be dismissed with prejudice because these claims are viewed as claims against the Township. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity . . . . It is *not* a suit against the official personally, for the real party in interest is the entity." (internal citations omitted)); *Monell*, 436 U.S. at 691 n.55 ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). As explained above, these claims against the Township fail and will therefore be dismissed.

The claims against Detective Maurer in his individual capacity will be dismissed with prejudice on qualified immunity grounds.[2] This doctrine "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231 (2008)) (internal quotation marks omitted). In order for an official to qualify for qualified immunity, a court must decide: 1) "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and 2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Courts are not bound to consider the two factors in a particular order;

---

[2] Although qualified immunity is an affirmative defense, "a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face." *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) (quoting *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir.1994)). As explained above, it is clear on the face of the Complaint that Credico's claims against Detective Maurer are barred by this defense.

5

a court may look to the second element of this test before the first element when determining if qualified immunity applies. *Id.* at 236.

Under the second prong, a violation of a "clearly established law" at the time of the alleged offense exits when the "contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he was doing violates that right" and "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (alterations in original) (citation and internal quotation marks omitted). The particular circumstances of a case should be taken into account, as "a qualified immunity determination must be made in light of the specific factual context of the case." *Thomas v. Independence Twp.*, 463 F.3d 285, 289 (3d Cir. 2006).

Credico's allegations against Detective Maurer in his individual capacity pursuant to § 1983 consist of 1) retaliatory prosecution in violation of the First Amendment, 2) malicious prosecution in violation of the Fourth Amendment, and 3) retaliation for the expression of protected speech in violation of the First Amendment.

Credico's claims for retaliatory prosecution in violation of the First Amendment and malicious prosecution in violation of the Fourth Amendment fail under the first prong of the qualified immunity test. Among other things, these claims require showing the criminal action was initiated without probable cause. *See Hartman v. Moore*, 547 U.S. 250, 265-66 (2006) (holding that a claim of retaliatory prosecution in violation of the First Amendment fails if the charges are supported by probable cause); *id.* at 258 ("In an action for malicious prosecution after an acquittal, a plaintiff must show that the criminal action was begun without probable cause for charging the crime in the first place."). "Probable cause exists if the facts and

circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Henry v. United States*, 361 U.S. 98, 102 (1959).

In this case, there was no violation of a constitutional right because Detective Maurer had probable cause to issue Credico a citation for disorderly conduct and to later change the charge to harassment. Under Pennsylvania law, a person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance, or alarm, he "(1) engages in fighting or threatening, or in violent or tumultuous behavior; (2) makes unreasonable noise; (3) uses obscene language, or makes an obscene gesture; or (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." 18 Pa. Cons. Stat. § 5503(a). Credico admits that, in a graveyard accessible by the public and in front of three groundskeepers, he gave Detective Maurer the middle finger and cursed at him. In addition, Judge Wheatcraft found that Credico was acting in a menacing or threatening manner. This behavior is obscene and serves no legitimate purpose, giving Detective Maurer probable cause to issue a citation for disorderly conduct.

Detective Maurer also had probable cause to change the charge from disorderly conduct to harassment. In Pennsylvania, a person is guilty of harassment if, "with intent to harass, annoy or alarm another, the person . . . engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose." 18 Pa. Cons. Stat. § 2709(a). Credico's actions appear to serve no legitimate purpose, and he testified in his trial at the Court of Common Pleas that he intended to provoke Detective Maurer into issuing him a citation for the sole purpose of filing this lawsuit. Mem. of Law in Supp. of Defs.' Mot. to Dismiss Pl.'s Compl. Pursuant to Fed. R. Civ. P. 12(b)(6), at 3, ECF 28-2. Because Credico gave the middle finger, approached the official in a menacing manner, and cursed at him, the official could reasonably believe Credico's actions

amounted to a course of conduct serving no legitimate purpose. In addition, a judicial officer, Judge Kraut, initially found there was sufficient evidence for a conviction of harassment. Even though Credico was later acquitted of charges of harassment, "the absence of probable cause [to arrest] is not established by an adjudication of innocence in the criminal proceeding." *Jones v. Middletown Twp.*, 253 F. App'x 184, 188 (3d Cir. 2007). Because probable cause existed to issue a citation for disorderly conduct and charge Credico with harassment, Credico has failed to make out a claim for retaliatory or malicious prosecution, and Detective Maurer is entitled to qualified immunity for these claims.

Credico's First Amendment retaliation claim fails under the second prong of the qualified immunity test. Credico bases his claim on the fact he was stopped in the graveyard for giving the middle finger and issued a citation. In *Reichle v. Howards* the Supreme Court found that it has never held there is a "right to be free from a retaliatory arrest that is otherwise supported by probable cause." 132 S. Ct. 2088, 2094 (2012). In that case, the plaintiff asserted a claim for retaliatory arrest. The Court found uncertainty existed regarding whether the standard for retaliatory prosecution in violation of the First Amendment—whereby the claim is defeated by the existence of probable cause—extended to retaliatory arrest. Ultimately, because the plaintiff was arrested with probable cause and the right at issue was not clearly established, the officer in that case was entitled to qualified immunity from the plaintiff's § 1983 claims. As applied to Credico's claims, because the Supreme Court held the right to be free from a retaliatory arrest supported by probable cause is not clearly established, and as explained above, Detective Maurer had probable cause to issue a disorderly conduct citation to Credico, Detective Maurer is entitled to qualified immunity for this claim. The claim will be dismissed with prejudice because any amendment would be futile.

8

Lastly, Credico's malicious prosecution claim against Detective Maurer under Pennsylvania law fails because individual officers are immune from suit for any acts performed within their scope of employment. 42 Pa. Cons. Stat. § 8545. This grant of immunity is abrogated only in cases where the "act of the employee caused the injury and . . . such act constituted a crime, actual fraud, actual malice or willful misconduct." *Id.* § 8550. To establish a claim for malicious prosecution under Pennsylvania law, the plaintiff must demonstrate: 1) "that the defendants instituted proceedings against the plaintiff . . . without probable cause," 2) "[the defendants instituted the proceedings] with malice," and 3) "the proceedings must have terminated in favor of the plaintiff." *Bradley v. Gen. Acc. Ins. Co.*, 778 A.2d 707, 710 (Pa. Super. Ct. 2001). Credico's malicious prosecution claim fails because, as has already been established, probable cause existed to institute proceedings.

Even if probable cause was not established, in order to abrogate Detective Maurer's immunity, Credico would have to show Detective Maurer acted with malice. *See Simpson v. Montgomery Ward & Co.*, 46 A.2d 674, 681 (Pa. 1946) ("The want of probable cause does not in itself prove that malice motivated the prosecution."). Credico has failed to make any such showing. Detective Maurer had not met Credico before June 28, 2012, and he only issued Credico the citation based on this single interaction. Because Credico failed to assert Detective Maurer acted with malice, and because the Court finds Detective Maurer's single interaction with Credico in response to Credico's disrespectful conduct does not establish malice, Detective Maurer is immune from suit under Pennsylvania law and this claim is dismissed with prejudice.

## II. CLAIMS AGAINST CHESTER COUNTY SHERIFF'S OFFICE, UNKNOWN SHERIFF, AND DEPUTY REEVES

Credico asserts claims against an unknown Chester County Sheriff in his individual and official capacity for interfering with his access to the courts and his rights to take notes at the end

of a hearing. He also asserts a claim against Chester County Sheriff Department Deputy Reeves in his individual and official capacity for excessive force.

### a. Claims Against Unknown Sheriff

Credico's claim against the Unknown Sheriff in his official capacity will be dismissed because, as explained above, a claim against an official in his official capacity is considered a claim against the entity, i.e. Chester County Sheriff's Office. Because local police departments are not "persons" who can be sued under § 1983, *see Johnson*, 834 F. Supp. at 878-79, Credico can only assert this claim against the municipality, i.e. Chester County. However, just like his claims against West Goshen Township, Credico is not permitted to bring claims against the County on a respondeat superior theory. Therefore, Credico's claim against the Unknown Sheriff in his official capacity will be dismissed with prejudice.

Credico's claims against the Unknown Sheriff in his individual capacity will be dismissed because the Unknown Sheriff is entitled to qualified immunity. As explained above, qualified immunity exists when: 1) the plaintiff fails to make out a violation of a constitutional right, or 2) the constitutional right was not clearly established. *Pearson*, 555 U.S. at 232. Credico asserts during the end of a Common Pleas in forma pauperis hearing, while he was "expressing how pissed off he was for being detained and prosecuted," Compl. 9, the Unknown Sheriff grabbed a pencil from him so he was unable to take notes. Credico alleges this incident interfered with his access to the courts and his rights to take notes at the end of a hearing.

Inmates have a constitutional right of meaningful access to the courts. *Bound v. Smith*, 430 U.S. 817, 822 (1977).[3] In order to establish a claim of interference with access to the courts,

---

[3] Credico does not provide a date or description for this hearing, other than it being an in forma pauperis hearing. However, it is clear from the Complaint Credico was in custody at the time this

the inmate must demonstrate "actual injury" and show that the "alleged shortcomings . . . hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). The actual injury requirement is not satisfied by just any type of frustrated legal claim. The inmate must "demonstrate that a nonfrivolous legal claim ha[s] been frustrated or [is] being impeded" as a result of the alleged act. *Id.* at 353 (footnotes omitted). "Depriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions." *Id.* at 353 n.3. Further, the Constitution requires "only that [inmates] be able to present their grievances to the courts." *Id.* at 360.

In this case, Credico did not provide a date or description of the hearing at which this incident took place, other than the fact it occurred in the Court of Common Pleas, and it is therefore not clear how his ability to take notes at this proceeding would help his pursuit of a legal claim. He also admits the officer only took his pencil at the end of the hearing. Even if Credico provided information about the hearing, the inability to take notes at the end of a hearing could not interfere with his pursuit of a nonfrivolous claim and does not establish a denial of access to the courts. No constitutional right was violated or implicated, and because the Unknown Sheriff is entitled to qualified immunity, the claim against him will be dismissed with prejudice.

### b. Claims against Deputy Reeves

Credico's claim against Deputy Reeves in his official capacity will be dismissed for the same reasons Credico's claims against Detective Maurer and the Unknown Sheriff in their official capacities will be dismissed—the claims are construed as against the County and do not meet the standard for municipal liability.

---

event allegedly occurred, and thus his access-to-the-court claim is analyzed under a prisoner's rights framework.

Credico's claims against Deputy Reeves in his individual capacity will be dismissed under the first prong of the qualified immunity test because Credico fails to demonstrate a violation of a constitutional right. Credico alleges that after an in forma pauperis hearing at the Chester County Courthouse on December 19, 2012, Deputy Reeves slapped Credico's right arm while escorting Credico back to the holding cells. Credico also suggests there was some conversation prior to the slap. Credico's allegations against Deputy Reeves do not amount to an excessive force claim. [4]

When presented with an excessive force claim the question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) (quoting *Brooks v. Kyler,* 204 F.3d 102, 106 (3d Cir. 2000)). The Eighth Amendment does not "protect an inmate against an objectively *de minimis* use of force." *Id.* In order to assert a claim under the Eighth Amendment

---

[4] When addressing an excessive force claim brought under § 1983, a court must first identify the specific constitutional right allegedly infringed by the challenged application of force. *Graham v. Connor*, 490 U.S. 386, 394 (1989). In most cases, those sources will be either the Fourth Amendment's prohibition against unreasonable seizures of the person or the Eighth Amendment's ban on cruel and unusual punishments. *Id.* When the "claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." *Id.*

Because Credico was in custody at the time of the alleged incident, and therefore was not seized or stopped, this Court analyzes his claims under an Eighth Amendment standard. However, even if the Court relied upon a Fourth Amendment reasonableness test, Credico's claims would still fail.

Under the Fourth Amendment standard, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citing *Terry v. Ohio,* 392 U.S. 1 (1968)). This inquiry is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* In this case, it is clear Deputy Reeves's actions were reasonable; a mere slap on the arm by an officer while escorting a prisoner back to a cell is not irrational or excessive. In addition, the alleged verbal exchange in which Deputy Reeves told Credico that "these people" didn't care about his lawsuit is neither abusive nor threatening, and therefore is not an unreasonable use of force.

two prongs must be met: 1) "the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections," and 2) "the officials acted with a sufficiently culpable state of mind" *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). A culpable state of mind requires that "[the officials] were motivated by a desire to inflict unnecessary and wonton pain." *Id*. Viewing the facts most favorably to Credico, a mere slap on the arm does not amount to a violation of his civil rights. A slap on the arm is not an excessive amount of force that caused any harm to Credico, and Credico does not assert, and there is no evidence to support, Deputy Reeves acted maliciously or sadistically.

Credico also asserts prior to the physical contact, Deputy Reeves told him that threatening to sue the county and police will not matter. Even if this could be considered verbal abuse, there was no civil rights violation; a prisoner cannot bring an action under § 1983 for idle threats or gestures. *See Aleem-X v. Westcott,* 347 F. App'x 731, 731 (3d Cir.2009) ("Verbal abuse of a prisoner, even of the lewd variety alleged here, is not actionable under § 1983."); *Murray v. Woodburn*, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment . . . is insufficient to state a constitutional deprivation."); *Panton v. Boom*, No. 07-350, 2007 WL 853848, at *2 (M.D. Pa. Mar. 20, 2007) ("Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations."). Credico's alleged exchange with Deputy Reeves is not the least bit provocative or threatening, and thus his civil rights were not violated by the verbal exchange.[5] Because a mere slap on the arm accompanied by this verbal

---

[5] Credico alleges that after the hearing in which his pencil was taken away, he verbally accosted a Sargent while he was being escorted to the prison van, and in response, the Sargent threatened that he would see Credico again. This claim fails for the same reasons the claims for verbal assault by Deputy Reeves fail: idle threats or verbal abuse do not amount to a civil rights violation.

remark is insufficient to state a claim for a constitutional violation of rights, the claims against Deputy Reeves will be dismissed with prejudice.

### III.    CLAIMS AGAINST CHESTER COUNTY

Credico fails to establish a plausible claim against Chester County for failure to train, and thus his claims against the County will be dismissed with prejudice. A § 1983 claim may be predicated on a failure-to-train theory only when the failure to train amounts to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (alteration in original) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). To establish municipal liability under § 1983 based on a failure-to-train theory, a plaintiff "must identify a failure to provide specific training that has a causal nexus with [his] injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Gilles v. Davis*, 427 F.3d 197, 207 n.7 (3d Cir. 2005) (quoting *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997)). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 131 S. Ct. at 1360 (alteration in original) (citation omitted).

The sole allegation regarding the County's failure to train appears at the end of Credico's Complaint in which he alleges "Chester County needs to train their piss-poor employees because they're a bunch of fucktards." Compl. 9. This lone conclusory (and distasteful) allegation is insufficient to state a plausible § 1983 claim against the County based on a failure-to-train theory. Credico does not identify any particular training the County failed to provide nor does he allege any facts suggesting the County had notice of an omission in its training program which

14

would cause its employees to violate a person's constitutional rights. *See Connick*, 131 S. Ct. at 1360. Because Credico has failed to allege a plausible claim for municipal liability under § 1983, his claims against the County will be dismissed. *See Bradshaw v. Twp. of Middleton*, 145 F. App'x 763, 768 (3d Cir. 2005) (affirming the dismissal of a § 1983 failure-to-train claim because plaintiffs failed to "identify any examples of specific training that the Township failed to provide," and it therefore could not "be said that the need for more or additional training [was] so obvious as to constitute deliberate indifference on the part of the Township"); *Pahler v. City of Wilkes-Barre*, 31 F. App'x 69, 72 (3d Cir. 2002) (affirming the dismissal of a § 1983 failure-to-train claim where the plaintiff "ma[de] no allegation that establishe[d] his injuries were ca[u]sed by the defendants' deliberately indifferent failure to train the City's officers"). Further, because Credico's claims against the Chester County officials do not amount to constitutional violations, as explained above, his claims against the County are dismissed with prejudice as amendment to his failure-to-train theory would be futile.

      An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.